**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATAHSA MCINTYRE,

    Plaintiff

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    Defendant

Civil Action No. 17-2007 (CKK)

---

**MEMORANDUM OPINION**
(May 15, 2019)

This is a disability discrimination and retaliation case brought by an employee of the

Washington Metropolitan Area Transit Authority ("WMATA").[1]  Plaintiff Natasha McIntyre

alleges that she was denied an accommodation for her disability and that she was retaliated

against for engaging in protected activity related to her disability. Plaintiff brings this lawsuit

against Defendant under the Rehabilitation Act of 1973. 29 U.S.C. § 794.

Before the Court is Defendant's [21] Motion for Summary Judgment.  Defendant claims

that it is entitled to summary judgment on both of Plaintiff's claims. Upon consideration of the

pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS

Defendant's motion.  First, the Court finds that summary judgment is appropriate on Plaintiff's

Count 1 claim for failure to accommodate because Plaintiff's requested accommodation,

involving a late work arrival and a change in work days, was not reasonable and would impose

---

[1] Plaintiff also brought a hostile work environment claim. However, in her Opposition to Defendant's Motion for Summary Judgment, Plaintiff voluntarily agreed to dismiss her hostile work environment claim. Pl.'s Opp'n, ECF No. 24, 1.

[2] The Court's consideration has focused on the following documents and their attachments and/or exhibits:  Def.'s Mot. for Summary Judgment, ECF No. 21 ("Def.'s Mot."); Pl.'s Opp'n to Def.'s Mot. for Summary Judgment, ECF No. 24 ("Pl.'s Opp'n"); and WMATA's Reply in Support of its Mot. for Summary Judgment, ECF No. 25 ("Def.'s Reply").  In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

an undue hardship on Defendant. Second, the Court finds that summary judgment is appropriate on Plaintiff's Count 3 retaliation claim as Plaintiff has failed to allege any adverse employment action that is causally connected to a protected activity.

## I. BACKGROUND

Plaintiff was hired by Defendant WMATA as a Special Police Officer in 2008. Def.'s Statement of Material Facts, ECF No. 21, ¶ 1. In 2010, Plaintiff was promoted to the rank of Sergeant, Special Police. *Id.* at ¶¶ 2-3. Originally, Plaintiff worked the night shift, but in 2014 Plaintiff selected to work the day shift, which runs from 6:00 a.m. to 2:00 p.m. *Id.* at ¶ 5. Once on the day shift, Plaintiff reported to Lieutenant Denise Craig. *Id.* at ¶ 10.

The parties dispute whether or not Plaintiff selected the day shift as part of a "bona fide seniority system." Defendant argues that it has a seniority system to determine the shifts and days which sergeants work. The most senior sergeants pick their shifts first, with the picks continuing down the line of sergeants according to seniority. *Id.* at ¶¶ 6-8. Plaintiff agrees that "[o]nce a year, the Sergeants choose among themselves based on their seniority as to who gets what shift." Pl.'s Statement of Material Facts, ECF No. 24, ¶ 2. However, Plaintiff contends that the seniority system is not "bona fide" as it is not implemented by management and there are exceptions to the seniority system for issues like overtime and holiday work. *Id.* at ¶ 1-2.

Defendant has a drug and alcohol testing policy for employees. Def.'s Statement of Material Facts, ECF No. 21, ¶ 11. In February 2016, Plaintiff's drug test revealed the presence of amphetamines. *Id.* at ¶ 16. The presence of amphetamines in Plaintiff's system was caused by the prescription drug Adderall which had been prescribed by her doctor to treat her Attention Deficit/Hyperactivity Disorder (ADHD). *Id.* at ¶ 18. Defendant found that Plaintiff had failed to follow the mandatory reporting procedures for prescription drugs. *Id.* at ¶ 19. Plaintiff disputes

this finding and argues that she reported her prescription drug use according to her supervisor's instruction. Pl.'s Response to Def.'s Statement of Material Facts, ECF No. 24, ¶ 19. As a result of Defendant's finding that Plaintiff had failed to report her prescription drug use in a satisfactory manner, Plaintiff was placed on a mandatory Employee Assistance Program enrollment for approximately fifteen days in March 2016. Def.'s Statement of Material Facts, ECF No. 21, ¶¶ 21-23.

Following Defendant's finding that Plaintiff had failed to report her prescription drug use, in March 2016, Plaintiff contacted Defendant regarding possible accommodations for her disability of ADHD. *Id.* at ¶ 24. Plaintiff met with Ada Posey, the Acting Chair of Defendant's Employees with Disabilities Panel. *Id.* at ¶ 25. In response to her discussions with Ms. Posey, Plaintiff submitted a letter from her doctor. As accommodations for Plaintiff's disability, her doctor recommended: "1) Approval for prescription drug use—Adderall XR [] 2) Flex time— employee choosing time to start and leave work daily, within limits 3) Short, frequent breaks throughout workday 4) Advice on breaking down large projects into smaller pieces 5) Written instructions and email reminders 6) Frequent performance reviews/regular feedback." Exhibit 5, ECF No. 21-6.

On April 7, 2016, the Employees with Disabilities Panel met with Plaintiff to discuss her request for accommodations. There is some dispute as to what accommodations Plaintiff requested pertaining to a change in her work schedule. Plaintiff contends that she requested an accommodation only "for the occasional times that her medication had a negative effect on her sleep." Pl.'s Statement of Material Facts, ECF No. 24, ¶ 3. Plaintiff explains that she did not request a permanent schedule change. Defendant contends that Plaintiff requested that her start time be changed from 6:00 a.m. to 8:00 a.m. or 9:00 a.m. and that her weekly scheduled work

days be changed from Friday through Tuesday to Monday through Friday. Def.'s Statement of

Material Facts, ECF No. 21, ¶¶ 33-34.

On May 13, 2016, the Panel issued its decision on Plaintiff's accommodations request.

Defendant offered its "full support" in accommodating Plaintiff by providing "1) advice on

breaking down large projects into smaller pieces; 2) written instructions and email reminders; 3)

short, frequent breaks throughout the workday; and 4) frequent performance reviews/regular

feedback." Exhibit 8, ECF No. 21-8. Defendant indicated that it was already providing Plaintiff

with some of these accommodations and that it would continue to do so. *Id.*

However, Defendant denied Plaintiff's request "to change [her] start time from 6:00 am

to 8:00 am or 9:00 am, and [her] weekly scheduled work days from Friday through Tuesday to

Monday through Friday." *Id.* Defendant indicated that this would be an unreasonable

accommodation. According to the denial letter "[g]ranting this accommodation would require

[Defendant] to breach the SPO (Special Police Officer) bona fide seniority system; and it would

require a number of changes in work schedules of other staff members to compensate for gaps in

coverage." *Id.* Moreover, as Plaintiff had been working the day shift for two years, Defendant

"[w]as confident in [Plaintiff's] capability to meet this current schedule and further suggested

that if [Plaintiff] wished to change [her] schedule to any of the other standard shift times, [she]

could do so via the 'picking system' (the bona fide seniority system…)." *Id.* Following Plaintiff's

initial denial for a scheduling accommodation, Plaintiff contacted Ms. Posey regarding an appeal

of the denial. However, in late May 2016, Plaintiff's request was again denied. Exhibit 5, ECF

No. 24-5.

The parties disagree on whether or not Plaintiff's requested scheduling accommodation

was reasonable. The parties agree that Plaintiff's day shift runs from 6:00 a.m. to 2:00 p.m.

Def.'s Statement of Material Facts, ECF No. 21, ¶ 40. In addition to Plaintiff, there are generally four other sergeants assigned to the day shift. *Id.* at ¶ 45. The next shift runs from 2:00 p.m. to 10:00 p.m., and the night shift runs from 10:00 p.m. to 6:00 a.m. *Id.* at ¶¶ 41-42. The parties also agree that the officers whom Plaintiff supervises on her day shift report at 6:45 a.m. for their 7:00 shifts. *Id.* at ¶ 43. Once the sergeants report to the station in the morning, approximately 20 officers who are assigned to the 7:00 a.m. shift will call in by phone. *Id.* at ¶ 47. At the beginning of the shift, sergeants are responsible for roll call, updating officers about any information they need to be aware of, debriefing previous officers, and providing assignments for some alternative officers reporting for duty. *Id.* at ¶ 48. The parties also agree that the sergeants are not responsible for preparing only for the officers whom they supervise. Instead, typically two of the five sergeants on Plaintiff's shift will perform the initial administrative duties for all of the officers. Pl.'s Response to Def.'s Statement of Material Facts, ECF No. 24, ¶ 49. The remaining three officers may provide assistance or complete their own work.

In addition to denying her request for a scheduling accommodation, Plaintiff further contends that Defendant retaliated against her for engaging in protected activities relating to her disability. Plaintiff's allegations of retaliation center on her supervisor Lieutenant Craig. Plaintiff first started working for Lieutenant Craig when she transferred to the day shift in March 2014. Plaintiff contends that she was a "target" of Lieutenant Craig ever since she arrived on the day shift. Def.'s Statement of Material Facts, ECF No. 21, ¶ 53.

In November 2016 and February 2017, Plaintiff filed complaints with Defendant's internal Equal Employment Opportunity ("EEO") office alleging that she was being retaliated against by Lieutenant Craig and others. Plaintiff made many allegations concerning perceived unfair treatment and favoritism towards certain officers. For example, Plaintiff alleged that

5

Lieutenant Craig publicly criticized her, called her a "cancer," disciplined her for tardiness, and allowed others to treat her negatively. Exhibit 6, ECF No. 24-6. And, Plaintiff further alleged that Lieutenant Craig had attempted to embarrass another officer by asking him to spell something aloud. Def.'s Statement of Material Facts, ECF No. 21, ¶¶ 63-64.

Based on the denial of her requested disability accommodation and the alleged retaliation, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May 23, 2017. Exhibit 8, ECF No. 24-8. The EEOC provided Plaintiff with a right to sue letter on June 13, 2017, and Plaintiff filed this lawsuit within 90 days on September 12, 2017.

The parties have completed discovery and were unable to resolve the matter through court-facilitated mediation. *See* Joint Status Report, ECF No. 18. On October 15, 2018, Defendant filed a Motion for Summary Judgment on Plaintiff's Rehabilitation Act claims for failure to accommodate, retaliation, and hostile work environment. *See generally* Def.'s Mot., ECF No. 21. In her opposition, Plaintiff agreed to dismiss her hostile work environment claim. Pl.'s Opp'n, ECF No. 24, 1. Accordingly, the only two issues currently before the Court are Defendant's request for summary judgment on Plaintiff's claims for failure to accommodate and retaliation.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*).  Be that as it may, the plaintiff is not relieved of his burden to support his allegations with competent evidence.  *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009).  As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage he bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . .  trial"— simply by way of offering conclusory allegations, speculation, and argument.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## III.  DISCUSSION

In her Amended Complaint, Plaintiff brings three claims under the Rehabilitation Act. In Count 1, Plaintiff alleges that Defendant discriminated against her based on her disability by wrongfully denying her reasonable accommodation. Am. Compl., ECF No. 13, ¶¶ 38-52. In Count 2, Plaintiff claims that she faced a hostile work environment on account of her disability.

*Id.* at ¶¶ 53-64. And, in Count 3, Plaintiff alleges that she was retaliated against for engaging in protected activities related to her disability. *Id.* at ¶¶ 65-80.

Plaintiff has voluntarily agreed to dismiss her Count 2 claim for a hostile work environment. Pl.'s Opp'n, ECF No. 24, 1. Defendant requests summary judgment on Plaintiff's remaining claims for failure to accommodate and retaliation.

Defendant argues that summary judgment is appropriate on both of Plaintiff's Rehabilitation Act claims. As to Plaintiff's failure to accommodate claim, Defendant contends that summary judgment should be granted because the statute of limitations has run and because Plaintiff's requested accommodation was not reasonable and would impose an undue hardship on Defendant. And, as to Plaintiff's retaliation claim, Defendant argues that summary judgment is appropriate because Plaintiff failed to allege any actionable adverse employment action which is causally connected to a protected activity.

The Court will address each argument in turn. Ultimately, the Court GRANTS Defendant's Motion for Summary Judgment on both counts. The Court concludes that Defendant did not discriminate against Plaintiff by denying her requested accommodation because that accommodation was unreasonable and would place and undue hardship on Defendant. Additionally, the Court finds that Plaintiff has failed to allege that Defendant retaliated against her by subjecting her to an adverse employment action causally connected to her protected activities.

## A.  Statute of Limitation

First, Defendant argues that Plaintiff's failure to accommodate claim under the Rehabilitation Act must be dismissed as barred by the statute of limitations. The Rehabilitation Act does not have an express statute of limitations. Accordingly, the Act must "borrow" one from

an analogous state cause of action. *See Spiegler v. D.C.*, 866 F.2d 461, 463-64 (D.C. Cir. 1989)

(explaining that when Congress has not established a statute of limitations for a federal cause of

action, courts should use the limitations period from an analogous state statute). The United

States Circuit Court for the District of Columbia Circuit ("D.C. Circuit") has not decided on an

analogous state cause of action from which courts should draw a limitations period when

analyzing Rehabilitation Act claims. And, courts have pulled limitations period from both the

District of Columbia Human Rights Act ("DCHRA"), which has a one-year limitations period,

and District of Columbia personal injury laws, which have a three-year limitations period. *See,*

*e.g., Adams v. D.C.*, 740 F. Supp. 2d 173, 184 (D.D.C. 2010) (borrowing the District of

Columbia's three-year statute of limitations for personal injury claims when analyzing a

Rehabilitation Act claim); *Gordon v. D.C.*, 605 F. Supp. 2d 239, 245 (D.D.C. 2009) (same); *but*

*see Jaiyeola v. D.C.*, 40 A.3d 356, 368-69 (D.C. 2012) (holding that the DCHRA is more

analogous to the Rehabilitation Act than the District of Columbia's personal injury laws and

applying the DCHRA's one-year statute of limitations to a Rehabilitation Act claim).

Defendant asks the Court to apply the one-year limitations period from the DCHRA, and

Plaintiff asks the Court to apply the three-year limitations period from District of Columbia

personal injury laws. The Court need not resolve this issue, because under either limitations

period, Plaintiff's Rehabilitation Act claim is timely.

Plaintiff filed her lawsuit on September 12, 2017. *See generally* Compl., ECF No. 1. This

filing date is well within three years of Defendant's denial of Plaintiff's accommodations request

in late May 2016. Accordingly, if the Court applies the limitations period from District of

Columbia personal injury laws, Plaintiff's claim is timely. Defendant does not appear to dispute that Plaintiff's claim would be timely if the three-year statute of limitations applies.

However, Defendant does dispute the timeliness of Plaintiff's claim if the one-year statute of limitations applies. As explained above, Plaintiff filed this lawsuit on September 12, 2017. *Id.* As such, Defendant's denial of Plaintiff's request would have had to occur on or after September 12, 2016. But, both parties agree that the denial occurred sometime in May 2016. As such, it would appear that Plaintiff's claim is untimely under a one-year limitations period. However, Plaintiff filed a charge with the EEOC on May 23, 2017. Exhibit 8, ECF No. 24-8. Accordingly, Plaintiff argues that the statute of limitations should be tolled from the filing of her EEOC charge. Defendant disagrees.

The District of Columbia Court of Appeals has held that "timely filing a claim with the [EEOC] … tolls the time for filing a private cause of action under D.C. law." *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 882 (D.C. 2008). Defendant has two arguments as to why the DCHRA's tolling provision does not make Plaintiff's claims timely.

First, Defendant argues that the DCHRA's tolling provision should not apply. Defendant cites one non-controlling district court case in which the court stated in dicta that "it would not be appropriate to toll the running of the statute of limitations while [the Plaintiff's] EEOC charge was pending because it is optional, not mandatory, to exhaust administrative remedies under the Rehabilitation Act." *Congress v. D.C.*, 277 F. Supp. 3d 82, 88-89 (D.D.C. 2017). The Court is not persuaded.

The D.C. Circuit has held that "generally when a federal court borrows a limitations period from state law, that law's tolling provisions come along as part of the package. That is because, 'in virtually all statutes of limitations the chronological length of the limitation period is

interrelated with provisions regarding tolling.'" *Alexander v. WMATA*, 826 F.3d 544, 551 (D.C.

Cir. 2016) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 464 (1975)). And, the

United States Supreme Court has explained that "[i]n borrowing a state period of limitation for

application to a federal cause of action, a federal court is relying on the State's wisdom in setting

a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Johnson*, 421

U.S. at 464 (refusing to toll the plaintiff's claim because the analogous state statute did not have

a tolling provision). Here, the District of Columbia set an exception to the DCHRA's one-year

statute of limitations when the plaintiff files an EEOC charge. The Court will respect that

exception to the one-year limitations period and concludes that "if the one-year statute of

limitations under the DCHRA applies, so does the Act's tolling provisions." *Hatter v. WMATA*,

105 F. Supp. 3d 7, 10-11 (D.D.C. 2015) (internal quotation marks omitted).

Second, Defendant contends that even if the DCHRA's tolling provision applies,

Plaintiff's claim is untimely. As was previously stated, Plaintiff filed her EEOC charge on May

23, 2017. According to Defendant, this was over one year after Defendant issued its Panel letter

denying Plaintiff's requested accommodation on May 13, 2016. However, the Panel's initial

denial of accommodation to Plaintiff was not the last act relevant to Plaintiff's failure to

accommodate claim. Instead, the denial was ongoing. On May 26, 2016, Plaintiff met with Ms.

Posey to appeal the Panel's denial of accommodation. Exhibit 14, ECF No. 24-14. And, on May

31, 2016, Ms. Posey corresponded with others on the Panel about revisiting Plaintiff's work

schedule accommodation. Exhibit 5, ECF No. 24-5. Accordingly, Plaintiff's EEOC charge, filed

on May 23, 2017, was filed within one year of the denial of Plaintiff's accommodations appeal.

In its Reply, Defendant does not contest that Plaintiff appealed the denial of

accommodation on May 26, 2016. And, Defendant fails to explain why this ongoing denial

would not be a relevant act within the statute of limitations. Lacking argument from Defendant, the Court concludes that the denial of Plaintiff's requested accommodation and the appeal of that denial occurred within one year of Plaintiff's EEOC charge. Accordingly, the DCHRA's statute of limitations was tolled, and Plaintiff's claim is timely.

The Court concludes that under either the one-year statute of limitations for DCHRA claims or the three-year statute of limitations for personal injury claims, Plaintiff's Rehabilitation Act claim is timely. Accordingly, the Court will not grant summary judgment on this ground.

## B.  Count 1- Failure to Accommodate

Next, Defendant contends that it should be granted summary judgment on Plaintiff's Count 1 failure to accommodate claim because Plaintiff's requested accommodation was not reasonable and would impose an undue hardship on Defendant. In order to establish a failure-to-accommodate disability discrimination claim under the Rehabilitation Act, Plaintiff must establish that: "(1) [she] was an individual who had a disability within the meaning of the statute; (2) that [Defendant] had notice of [her] disability; (3) that with a reasonable accommodation [she] could perform the essential functions of the position; and (4) that [Defendant] refused to make such accommodations." *Thompson v. Rice*, 422 F. Supp. 2d 158, 165-66 (D.D.C. 2006). For purposes of its motion for summary judgment only, Defendant does not contest that Plaintiff is disabled within the meaning of the statute. Def.'s Mot., ECF No. 21, 9. Defendant also does not dispute that it had notice of her disability and that it refused her request for an accommodation. Instead, the issue before the Court is whether or not Plaintiff's accommodation was reasonable and whether or not it would have created an undue hardship for Defendant.

Even though "[w]hether a proposed accommodation is reasonable and whether it imposes undue hardship are separate inquiries," the D.C. Circuit has explained that "the analyses often

overlap, especially when evaluating as-applied claims of reasonableness." *Taylor v. Rice*, 451 F.3d 898, 908 (D.C. Cir. 2006) (internal citation omitted). The overlap occurs where, as here, the employer's hardship claim depends on "the particular circumstances of the case," as does the employee's claim of reasonableness. *Id.* (internal quotation marks omitted). Furthering the overlap, "[a]n accommodation is 'reasonable' if it allows the employee to fulfill all essential functions of her job without imposing an undue hardship on the employer." *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 126 (D.D.C. 2009). It is the burden of Plaintiff to identify what reasonable accommodations would have allowed her to perform the essential functions of her employment, but it is the burden of Defendant to show that the accommodation would pose an undue hardship. *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 23-24 (D.D.C. 2003).

### 1. Nature of Requested Accommodation

Prior to analyzing the reasonableness and undue burden of Plaintiff's accommodation request, the Court must determine the nature of the accommodation Plaintiff requested. Plaintiff contends that she did not request a permanent change to her schedule. Instead she requested flex time "for the occasional times that her medication had a negative effect on her sleep." Pl.'s Statement of Material Facts, ECF No. 24, ¶ 3. Defendant argues that Plaintiff's accommodation request was not occasional or temporary. Instead, Defendant contends that Plaintiff requested "to start her shift at 8:00 a.m. or 9:00 a.m. instead of the 6:00 a.m. report time, [and] to change her days to report to work from Fridays through Tuesdays." Def.'s Statement of Material Facts, ECF No. 21, ¶ 33. In support, Defendant cites the Panel's letter denying Plaintiff's requested accommodation. The letter explains that "[o]n April 17, 2016, the Panel met with [Plaintiff] to discuss [her] request to change [her] start time from 6:00 am to 8:00 am or 9:00 am, and [her] weekly scheduled work days from Friday through Tuesday to Monday through Friday." Exhibit

13, ECF No. 25-2, 704; *see also Id.* at 702 (notes from Plaintiff's Panel interview indicating a request for a 8:00 a.m. or 9:00 a.m. start time); Exhibit 12, ECF No. 25-1, 28:1-9 (deposition of Ms. Posey explaining that Plaintiff had requested to start work daily "after the normal regular shift started"), 33:11-19 (explaining that the panel discussed with Lieutenant Craig Plaintiff's request to arrive at 8:00 a.m. or 9:00 a.m.). The Court agrees with Defendant and finds that Plaintiff requested an accommodation "to change [her] start time from 6:00 am to 8:00 am or 9:00 am, and [her] weekly scheduled work days from Friday through Tuesday to Monday through Friday." Exhibit 13, ECF No. 25-2, 704; *see also* Exhibit 1, ECF No. 24-1, 131:3-9 (Plaintiff's response of "[t]hat's the time frame we requested" when asked "[w]here did the 8:00 or 9:00 come from?").

　　In support for her argument that she requested only occasional scheduling accommodations, Plaintiff cites to only her own deposition. But, even Plaintiff's own testimony fails to contradict Defendant. Plaintiff's testimony says nothing to support her argument that her request was temporary or occasional. Instead of addressing the nature of her requested accommodation, Plaintiff's testimony primarily discusses her sleep issues. Exhibit 1, ECF No. 24-1, 57:19-22 ("No. It was just the issue of me having issues with my sleep patterns…"), 152:5-6 ("Yes, because my sleep patterns are thrown off due to my medications at times. So that's what it was for."). Plaintiff's cited testimony also referred to her requested accommodation as a request for "flex time." *Id.* at 76:1-8 ("…flex time…"), 80:21-81:1 ("Flex time, employee chooses time to start and leave work daily within limits.") 66:12-16 ("I requested to change my schedule and – are you saying the entire accommodation or – I'm reading a portion that mentions it, that's all…"). But, use of the term "flex time" does not establish that Plaintiff was requesting only occasional or temporary accommodations. Instead, based on the record, the Court finds that

"flex time" referred to a request to regularly work on a schedule chosen by Plaintiff which differed from the schedule assigned by Defendant. As Plaintiff herself noted, her request for flex time was a request to "choose[] [a] time to start and leave work daily within limits." *Id.* at 80:22-81:1.

In concluding that Plaintiff's request was for a consistent and permanent schedule change, the Court also considers Plaintiff's own actions. Plaintiff not only requested to change her arrival time, but she also requested to change her work days from Friday through Tuesday to Monday through Friday. It is not clear to the Court how a request to switch scheduled work days with another sergeant could be for only the "occasional" times when her medication negatively affected her sleep. Additionally, following receipt of the Panel's letter denying her accommodation, Plaintiff met with Ms. Posey to discuss an appeal. Plaintiff provided Ms. Posey with a proposed work chart which appears to show Plaintiff starting each of her work shifts at 9:00 a.m. Exhibit 13, ECF No. 25-2, 703. As such, Plaintiff's actions in appealing her denial provide additional evidence that she was requesting a permanent accommodation.

Plaintiff fails to cite any evidence which contradicts Defendant's argument or which would tend to establish that her requested accommodation was either occasional or not permanent. Accordingly, the Court credits Defendant's argument, supported by evidence, that Plaintiff requested an accommodation which would allow her "to change [her] start time from 6:00 am to 8:00 am or 9:00 am, and [her] weekly scheduled work days from Friday through Tuesday to Monday through Friday." *Id.* at 704.

## 2.  Reasonableness and Hardship on Defendant

Having established the nature of Plaintiff's accommodation request, the Court will now assess its reasonableness and whether or not it would cause Defendant undue hardship.

"[A]ccommodations are reasonable if they allow the employee to perform the essential functions of the job without imposing undue hardship on the employer." *Norden v. Samper*, 503 F. Supp. 2d 130, 145 (D.D.C. 2007). The Court concludes that Plaintiff's request to work Monday to Friday rather than Friday to Tuesday and to move her start time from 6:00 a.m. to 8:00 or 9:00 a.m. was not reasonable and would impose an undue hardship on Defendant.

### a.   Change of Work days

First, the Court will address Plaintiff's request to work Monday through Friday rather than Friday through Tuesday. The Court finds that a seniority system governs how Plaintiff and other sergeants pick the days which they work. As Plaintiff's requested work day change would require Defendant to violate its seniority system, the Court finds that the request was unreasonable.

In her deposition, Lieutenant Craig explained that employees are given two days off per week. Employees pick the days which they work "by seniority." Exhibit 9, ECF No. 21-5, 39:1-40:18. As Lieutenant Craig stated, "[t]he first—whoever has the most seniority is number one all the way down to number—I think we have about 14 sergeants. So, like if you're the first sergeant, you pick the shift, and they offer you one, and you sign your name to that square, okay? The next person picks. And then when it gets down to the last sergeant, they pick." *Id.* Sergeants work the days which they are assigned through the seniority system for one year, then sergeants have a new opportunity to pick different days on which to work. *Id.*; *see also* Exhibit 8, ECF No. 21-8 (in the Panel letter denying Plaintiff's accommodation, explaining that it would require a breach of the "bona fide seniority system"); Exhibit 14, ECF No. 25-3, ¶ 7 (Affidavit of Lieutenant Patrice Savoy explaining that "WMATA adheres to [the seniority system] for the scheduling of the Sergeants' shift, which include picking both days and hours").

In *United States Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002), the Supreme Court explained that, generally, when a requested accommodation would violate the rules of a seniority system, that accommodation is per se unreasonable. 535 U.S. at 402-03. When a requested accommodation would violate a seniority system, the Defendant is not required to show "on a case-by-case basis that [the] seniority system should prevail." *Id.* at 403. Instead, the burden is on the employee to show that "despite the presence of a seniority system …, the requested 'accommodation' is 'reasonable' on the particular facts." *Id.* at 405.

Here, the Court concludes that Defendant has a seniority system for selecting days on which employees will work. In order to implement Plaintiff's requested accommodation and switch her work days to Monday through Friday, Defendant would have to violate its seniority system. Plaintiff has provided no special circumstances which would merit the violation of a seniority system. In fact, it is not clear to the Court how this requested accommodation is responsive to Plaintiff's disability. Plaintiff contends that she needs a schedule change due to her ADHD medication which makes it difficult to sleep. However, Plaintiff fails to explain how switching work days would accommodate this disability, as Plaintiff's sleep problems are sporadic and presumably not limited to certain days of the week. Moreover, it does not appear that Plaintiff's doctor requested that she be given new work days as an accommodation for her disability. *See* Exhibit 6, ECF No. 21-6 (letter from Plaintiff's doctor).  As such, Plaintiff has provided no special reason for Defendant to violate its seniority policy by changing her work days.

In response, Plaintiff argues that *Barnett* is not controlling because Defendant does not have a "bona fide" seniority system. Plaintiff explains that Defendant's seniority system is not "bona fide" because Defendant deviates from the system when it comes to assigning overtime,

holiday work, and temporary shift coverage. Additionally, Plaintiff contends that the seniority

system is not "bona fide" because it is not controlled by any collective bargaining agreement or

other formal management decision. The Court is not persuaded by Plaintiff's arguments.

First, Plaintiff fails to explain why Defendant's use of a seniority system for some, but

not all, staffing decisions would affect the Court's analysis. Plaintiff provides examples of

instances in which the seniority system was not used for issues of overtime, holiday pay, and

temporary shift coverage. But, Plaintiff cites no examples in which the yearly process for

selecting shifts and days to work was controlled by anything other than seniority. And, Plaintiff

concedes that Sergeants select their work schedules "based on their seniority." Pl.'s Statement of

Facts, ECF No. 24, ¶ 2. The Court concludes that the fact that the seniority system is not used for

some staffing decisions does not negate the fact that the seniority system is used for the yearly

selection of work days.

Next, Plaintiff contends that the she should not be bound by Defendant's seniority system

because it is not controlled by a collective bargaining agreement or by another formal

management decision. However, even if the seniority system for selecting work days is not

cemented by contract or written agreement, the seniority system is still an entrenched policy.

And, "[a]n employer is not required to reassign a disabled employee in circumstances when such

a transfer would violate a legitimate, nondiscriminatory policy of the employer." *Aka v.

Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc) (internal quotation

marks omitted); *see also Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1176 (10th Cir. 1999) (en

banc) ("[A]n industry may have a well entrenched seniority system which, even though not

rooted in a collective bargaining agreement, is so well established that it gives rise to legitimate

expectations by other, more senior employees to a job that the disabled employee might desire.").

Moreover, compliance with Defendant's well-established seniority system is supported by *Barnett's* reasoning. As *Barnett* explained, seniority systems create and fulfill "employee expectations of fair, uniform treatment," limit unfairness in personnel decisions, and help employers meet employees' expectations as they grow throughout their career. *Barnett*, 535 U.S. at 404. Defendant's seniority system, though not formally mandated, is well-established and fulfills these purposes.

In summary, even though Defendant's seniority system is not mandated by a collective bargaining agreement or by other formal agreement, Defendant "adheres to it for the scheduling of Sergeants' shifts, which include picking both days and hours." Exhibit 14, ECF No. 25-3, ¶ 7 (affidavit of Plaintiff's current supervisor, Lieutenant Patrice Savoy). Plaintiff has cited no examples in which Defendant has permanently assigned a Sergeant to a specific shift or to a specific work day outside of the seniority system. And, Plaintiff acknowledges that Sergeants select their work schedules "based on their seniority." Pl.'s Statement of Facts, ECF No. 24, ¶ 2. Accordingly, the Court finds that the selection of Plaintiff's work days was controlled by a seniority system. Plaintiff presents no special circumstances which would warrant a departure from this seniority system. As such, the Court concludes that Plaintiff's request to work Monday through Friday, rather than Friday through Tuesday, was unreasonable as it would have required a violation of Defendant's seniority system.

**b. Change of Arrival time**

Next, the Court addresses Plaintiff's requested accommodation to change her daily start time from 6:00 a.m. to 8:00 a.m. or 9:00 a.m. The Court concludes that Plaintiff's

accommodation was unreasonable as it would prevent her from fulfilling her essential duties. Additionally, the accommodation would impose an undue hardship on Defendant.

According to Defendant's standard operating procedures, sergeants on the day shift begin their shift at 6:00 a.m. Exhibit 10, ECF No. 21-10. After they arrive, sergeants are required to "[e]ngage and participate in a debriefing session with the previous shift sergeants to obtain awareness of ongoing issues which may affect the current or following shift(s). Sergeants will ensure that they are briefed at the beginning and the end of each shift." *Id.* Additionally, sergeants must "[c]onduct the field roll call an hour past the shift supplying read board information to field officers prior to conducting field post patrol supervision." *Id.* In order to complete these initial duties, sergeants begin their shift at 6:00 a.m., prior to when officers, who will be starting their shifts at 7:00 a.m., call in. As Lieutenant Craig testified, "during the morning time is the critical part of their job." Exhibit 2, ECF No. 24-2, 36:5-8. If Plaintiff arrived for her shift between 8:00 a.m. and 9:00 a.m., she would not be able to perform these required tasks. Exhibit 14, ECF No. 25-3, ¶ 6 (explaining that "[i]f Plaintiff were allowed to report at 8:00 a.m. or 9:00 a.m., all of the daily administrative duties of Sergeant would, for the most part, already have to be finished by that time").

Plaintiff seems to acknowledge that, by arriving two to three hours after the start of her shift, she would not be able to perform many essential duties. In her deposition, Plaintiff conceded that, at the beginning of her shift, she has time-sensitive administrative responsibilities. Exhibit 1, ECF No. 21-1, 132:8-15. She specifically stated that, at the beginning of her shift, she has responsibility for roll call, figuring out which officers have not reported in, and filling any potential vacancies. *Id.* at 132:21-133:7. Plaintiff acknowledged that completing these tasks is an essential part of her duties. *Id.* at 133:17-24 ("Yes. That's considered part of my duties.").

Plaintiff further conceded that by coming in at 8:00 a.m. or 9:00 a.m., many of those decisions and tasks would already be completed for sergeants on the 6:00 a.m. shift. *Id.* at 133:12-16.

Following her deposition and Defendant's motion for summary judgment, Plaintiff filed a Declaration which attempted to backtrack her testimony regarding her essential duties. In her Declaration, Plaintiff states that "the essential functions of my job are not coordinated with the reporting time of the officers whom I supervise. The essential functions of my job are spread throughout my workday." Exhibit 10, ECF No. 24-10, ¶ 14.

The Court is not persuaded by Plaintiff's Declaration. Courts are permitted to "disregard an offsetting affidavit that is submitted to withstand a motion for summary judgment when the affidavit contradicts prior deposition testimony without adequate explanation and creates only a sham issue of material fact." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160 (D.D.C. 2008) (internal quotation marks omitted); *see also Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (same).

Here, the Court finds that Plaintiff's first statement that her essential functions are not coordinated with the reporting time of the officers whom she supervises directly contradicts her deposition testimony. In her deposition Plaintiff explained that "essential parts of [her] job" involved roll call and resolving coverage issues. Exhibit 1, ECF No. 21-1, 132:8-133:24. As such, Plaintiff acknowledged that she has essential duties which are coordinated with officers arriving for the 7:00 a.m. shift. Accordingly, the Court disregards Plaintiff's later-filed Declaration stating that "the essential functions of [her] job are not coordinated with the reporting time of the officers whom [she] supervise[s]." Exhibit 10, ECF No. 24-10, ¶ 14.

In her Declaration, Plaintiff further stated that "[t]he essential functions of [her] job are spread throughout [her] workday." *Id.* The fact that essential functions are spread throughout

Plaintiff's workday may be true. But, that fact does not negate the existence of essential functions which Plaintiff must perform prior to 8:00 a.m. or 9:00 a.m. As such, this statement does not create a material issue of fact as to whether or not there are essential functions which Plaintiff would not be able to perform if she regularly arrived two to three hours late for her shift.

Based on both the employer's description of Plaintiff's job and Plaintiff's description of how her own job operates in practice, the Court concludes that Plaintiff has essential duties which occur during the beginning of her shift. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1257 (11th Cir. 2007) (explaining that an employer's written description is strong evidence of the essential functions of a job); *Solomon v. Vilsack*, 763 F.3d 1, 10 (D.C. Cir. 2014) (recognizing that an employer's essential functions are determined by the employer's description and how the job is performed in practice). And, by arriving two to three hours late, Plaintiff would not be able to complete these essential duties. Accordingly, because Plaintiff would not be able to perform some of her essential functions, Plaintiff's requested accommodation of a later start time was not reasonable.

In her Opposition, Plaintiff contends that her accommodation request was reasonable because each of the sergeants on her shift share the morning duties. As such, in Plaintiff's absence, the other sergeants could still perform the morning duties. Generally, five sergeants are on duty at 6:00 a.m. Two of those sergeants are responsible for performing the morning duties. The other three sergeants have the opportunity to do other daily work and catch up on evaluations. Exhibit 2, ECF No. 24-2, 36:2-37:22. Plaintiff contends that, because there are other sergeants on duty who are able to conduct the morning's operational business, her request for a late arrival is reasonable.

The Court disagrees and finds that consistently requiring the other four sergeants on the 6:00 a.m. shift to complete the morning's operational tasks absent Plaintiff is an undue hardship. Lieutenant Craig explained that Defendant requires additional sergeants to be present at the beginning of the shift in case some sergeants are absent or otherwise engaged. As Lieutenant Craig testified, "if a sergeant is not there for a long period of time, it will be a stress on the sergeants." Exhibit 2, ECF No. 24-2, 36:5-7. Additionally, by taking Plaintiff out of the morning rotation, the other sergeants will be required to conduct the initial operations more frequently, giving them less opportunity to work on their own administrative tasks and evaluations. *See Rehrs v. Iams Co.*, 486 F.3d 353, 357 (8th Cir. 2007) (explaining that "an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated" (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996))); *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) (finding "unreasonable" an accommodation that would "require another person to perform an essential function" of the disabled employee's job).

Plaintiff contends that requiring the other four sergeants on the day shift to conduct the morning operations would not be an undue hardship because Defendant has previously allowed other officers to have flexible start times. Plaintiff provides three examples. According to Plaintiff, an officer was allowed to report for duty 15 minutes after the start of his shift for religious reasons, another officer was given permission to arrive 45 minutes to an hour after the start of his shift due to a hardship at home, and a lieutenant was permitted to work from 8:00 a.m. to 4:30 p.m. despite being the only individual with this schedule. Exhibit 10, ECF No. 24-10, ¶ 7.

These examples are not persuasive to the Court. The first two examples concern officers, not sergeants. Officers do not have the same essential duties and supervisory roles as sergeants. The third example concerns a lieutenant, and Plaintiff provides no evidence that lieutenants are on the same shift schedule as sergeants or that lieutenants have to perform time-sensitive duties. Defendant filed an Affidavit from Lieutenant Patrice Savoy, Plaintiff's current supervisor, stating that she knowns of "no Sergeant allowed to report late to their shift on a regular basis. People sometimes run late or, get approval in advance to report late for a day or two. No Sergeant can perform the essential duties of the job by arriving 2 to 3 hours after their shift has started." Exhibit 14, ECF No. 25-3, ¶ 9. Moreover, Plaintiff fails to provide any details of these permitted shift adjustments, such as how long these changes lasted and how frequently they were used.

In summary, Plaintiff has admitted that at least some of the essential duties of a sergeant occur during the initial part of her shift. If Plaintiff arrived two to three hours late, Plaintiff would not be able to perform these essential duties. In order to maintain its practice of regularly rotating sergeants to perform the essential early morning tasks, Defendant would be required to force other sergeants to cover for Plaintiff's absences or move other sergeants' schedules. Accordingly, the Court finds that Plaintiff's requested accommodation of arriving for her 6:00 a.m. shift at 8:00 a.m. or 9:00 a.m. was unreasonable and would impose an undue hardship on Defendant.

### 3.  Engagement in the Interactive Process

Plaintiff presents a final argument as to why Defendant violated the Rehabilitation Act by denying her requested accommodation. Plaintiff contends that Defendant violated the Rehabilitation Act by not engaging in the required "interactive process." Once an employer is

made aware of an employee's disability, the employer must make a reasonable effort to determine an appropriate accommodation. *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 62 (D.D.C. 2012). Although "the interactive process 'is not an end in itself,' 'if a jury [can] conclude that [an employer] failed to engage in good faith in the interactive process, and that failure led to [the employer] not according reasonable accommodations to [the employee] in a timely manner, summary judgment cannot be granted.'" *Id.* (quoting *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005)).

In reviewing the record in this case, the Court concludes that Defendant engaged in an interactive process with Plaintiff. Plaintiff first emailed Ms. Posey on March 22, 2016 regarding accommodations for her disability. Exhibit 13, ECF No. 25-2, 707. The following day, Plaintiff met with Ms. Posey to discuss possible accommodations. *Id.* at 701. Following that meeting, Ms. Posey emailed Plaintiff the accommodations request form and explained the process for formally requesting an accommodation. *Id.* at 710. On March 29, 2016, Plaintiff provided her accommodations documentation to Ms. Posey. *Id.* at 701. On April 7, 2016, the Employees with Disabilities Panel met with Plaintiff. During this meeting, the Panel listened to Plaintiff describe her disability and her requested accommodations, asked questions, and explained the accommodations process. Exhibit 12, ECF No. 25-1, 30:10-31:7. The Disability Panel next met with Plaintiff's supervisor, Lieutenant Craig, to determine whether Plaintiff's requested accommodations were feasible. *Id.* at 31:8-20.

On May 13, 2016, the Panel issued its letter denying Plaintiff's request to change her start time from 6:00 a.m. to 8:00 a.m. or 9:00 a.m. and to work Monday through Friday rather than Friday through Tuesday. Exhibit 13, ECF No. 25-2, 704. However, the letter also indicated Defendant's "full support" in providing or continuing to provide for Plaintiff's other four

requested accommodations. *Id.* Following this denial, Ms. Posey again met with Plaintiff on May 26, 2016 to discuss a reconsideration of the denial of her requested schedule change. *Id.* at 703. However, the request was again denied.

Based on this sequence of events, the Court finds that Defendant engaged in an interactive process with Plaintiff. Ms. Posey met with Plaintiff, explained the accommodations request process, discussed her requested accommodations, and considered Plaintiff's documentation. The Employees with Disabilities Panel met with Plaintiff to discuss her accommodations and met with Plaintiff's supervisor to determine whether the requested accommodations were feasible. The Panel then made a timely determination, indicating support for four of Plaintiff's requested accommodations and denying one. Following this partial denial, Ms. Posey again met with Plaintiff to discuss a reconsideration of the denial for a schedule change. Accordingly, the Court concludes that the denial of Plaintiff's requested accommodation was not a result of Defendant's failure to engage in the interactive process.

### 4.  Summary

For the above reasons, the Court concludes that Plaintiff's requested accommodation of changing her arrival time from 6:00 a.m. to 8:00 a.m. or 9:00a.m. and changing her work days from Friday through Tuesday to Monday through Friday was not reasonable and would impose an undue hardship on Defendant. Changing the days which Plaintiff works would require Defendant to violate its seniority policy. And, changing Plaintiff's arrival time would prevent her from fulfilling her essential duties and cause other employees to conduct additional administrative tasks. Because Plaintiff's requested accommodation was unreasonable and would impose an undue hardship on Defendant, Defendant's denial of the accommodation did not

violate the Rehabilitation Act. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Count 1 claim for denial of an accommodation.

## C.  Count 3- Retaliation

In addition to bringing a claim for failure to accommodate, Plaintiff also brings a claim for retaliation. Plaintiff contends that Defendant retaliated against her for making an accommodation request and for filing internal EEO complaints. Defendant contends that it should be granted summary judgment on this claim because Plaintiff has failed to allege a materially adverse action and because Plaintiff has failed to establish a causal connection to her protected activity.

The Rehabilitation Act not only prohibits federal agencies from discriminating on the basis of disability, it also prohibits them from retaliating against employees as a form of employment discrimination. To establish a claim of retaliation under the Rehabilitation Act, the plaintiff must show that she (1) engaged in a protected activity; (2) was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). Retaliation claims do not protect an individual "from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

Defendant does not dispute that Plaintiff engaged in a protected activity when she requested accommodations for her disability in March 2016, when she appealed the denial of her request in May 2016, and when she filed internal EEO complaints in November 2016 and February 2017. Instead, Defendant argues that Plaintiff has failed to establish the last two elements—that she was subject to an adverse employment action and that there is a causal link to Plaintiff's protected activity.

28

First, to establish an adverse employment action in the absence of a diminution in pay or benefits, Plaintiff must show an action which "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting *Burlington*, 548 U.S. at 68). When courts assess an alleged adverse employment action, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 69. Because the anti-retaliation provision protects employees only from retaliation that produces an injury or harm, courts have to "separate significant from trivial harms" and remember that retaliation provisions do "not set forth a general civility code for the American workplace." *Id.* at 67-68 (internal quotation marks omitted).

Plaintiff cites many incidents which she labels as adverse employment actions. For example, Plaintiff claims that he was ostracized from conversations, told that she should find a job as a security officer, blamed for various things, and that one of her subordinates was encouraged to file a grievance against her. Am. Compl., ECF No. 13, ¶ 27. Plaintiff alleges that her time, attendance, and performance were monitored more closely than other employees. Plaintiff further claims that Lieutenant Craig read a complaint about Plaintiff aloud to Plaintiff while laughing, refused to investigate and discipline two other officers for making allegedly false complaints against Plaintiff, and called her "crazy." *Id.* at ¶¶ 29-30; Exhibit 1, ECF No. 24-1, 251:22-252:2.  And, Plaintiff claims that Lieutenant Craig took credit for Plaintiff's initiative to obtain new radios and unfairly chastised her for an error that she did not make. *Id.* at ¶¶ 31-32. Additionally, Plaintiff alleges that Lieutenant Craig failed to support Plaintiff when two officers asked to be removed from her supervision. *Id.* at ¶ 33. And, Plaintiff claims that she was required to make complaints about her treatment within the hearing of other officers. *Id.* at ¶ 34.

The Court finds that Plaintiff has failed to establish that any of these alleged actions constitutes an adverse employment action. Instead, Plaintiff has alleged comments and treatment which are "at most fleeting and minor annoyances, not materially adverse actions that might have dissuaded a reasonable worker form making or supporting a charge of discrimination." *Redding v. Mattis*, 327 F. Supp. 3d 136, 145 (D.D.C. 2018) (internal quotation marks omitted). None of the actions alleged by Plaintiff produced an actionable injury or harm. Instead, the alleged actions constitute minor altercations which do not meet "the requisite level of regularity or severity to constitute material adversity for purposes of a retaliation claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008). Accordingly, the Court concludes that Plaintiff's alleged mistreatment, primarily conducted by Lieutenant Craig, fails to rise to the level of an adverse employment action. *See, e.g., Baloch*, 550 F.3d at 1198-99 (finding that the plaintiff's allegations that his employer imposed sick leave restrictions, proposed two thirty-day suspensions, issued a letter of counseling and reprimand, and yelled at him were not materially adverse); *Brokenborough v. D.C.*, 236 F. Supp. 3d 41, 59 (D.D.C. 2017) (explaining that "single incidents of verbal taunts and mocking, eye-rolling and cursing, a forged leave request slip, and an incident in which someone pretending to be [the plaintiff] called in sick" were not materially adverse); *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (finding that the plaintiff's allegations that she was excluded from assignments, that her supervisor slammed a door in her face, that her supervisor told other employees that she did not want to supervise plaintiff, that she was told a fifth grader could do her job, and that she was ignored and yelled at were not material).

The only acts alleged by Plaintiff that could constitute adverse actions are the allegations that she was subjected to a denial of overtime and leave requests as these actions could result in a

harm sufficient to dissuade a reasonable employee from making a charge of discrimination. Pl.'s
Opp'n, ECF No. 24, 35.

As to Plaintiff's allegations of denial of overtime, in her Amended Complaint, Plaintiff
states that she was "not notified for overtime opportunities like each of her co-workers, [and] not
given the opportunity for regular or holiday overtime like her co-workers." Am. Compl., ECF
No. 13, ¶ 27. In her deposition, Plaintiff explained that sometime in late 2017 there were "a lot of
opportunities [for overtime] because [of] … two sergeants that were suspended" and another
sergeant that was absent.  Exhibit 1, ECF No. 24-1, 198:15-24. Plaintiff further explained that
during a meeting, Defendant asked who would be interested in working overtime and Plaintiff
indicated her interest. But, "after that meeting it still was not being distributed fairly." *Id*. at
199:16-22.

The Court finds that Plaintiff fails to provide any specific factual details regarding
Defendant's denial of her opportunities for overtime. Plaintiff provides no evidence explaining
when these denials of overtime occurred, how often they occurred, who was granted overtime in
Plaintiff's stead, and what made the distribution system "unfair."  *Bell v. Gonzales*, 398 F. Supp.
2d 78, 96-97 (D.D.C. 2005) (explaining that depending on the circumstances of the denial, a
denial of overtime has the potential to be an adverse action). Plaintiff's bare allegation that she
was denied overtime opportunities, without any factual development or support, is insufficient to
withstand a motion for summary judgment.

Similarly, Plaintiff fails to provide any factual details concerning her alleged denials of
leave. The denial of leave requests can constitute an adverse action depending on the
circumstances. *Ramsey v. Moniz*, 75 F. Supp. 3d 29, 54-55 (D.D.C. 2014). However, here,
Plaintiff fails to explain how often she was denied requests for leave or the amount of days for

which she was denied. Without such information, Plaintiff has failed to allege that the denial of

leave rose above a de minimis amount to constitute an adverse action. *Dorns v. Geithner*, 692 F.

Supp. 2d 119, 134 (D.D.C. 2010) ("[E]ven assuming that the denial of advanced sick leave is

actionable, the amount in question here is too de minimis to be considered 'material' or

'significant.'").

Even if the Court were to assume that Plaintiff's allegations concerning the denial of

overtime opportunities and leave constituted adverse employment actions, Plaintiff has failed to

causally connect the denials to a protected activity. In order to sustain a retaliation claim under

the Rehabilitation Act, Plaintiff must establish that the adverse action is causally connected to a

protected activity. Temporal proximity can support an inference of causation when the two

events are "very close" in time. *Woodruff*, 482 F.3d at 29. However, Plaintiff alleges only

generally that there were overtime opportunities in late 2017, and she fails to allege any specific

instances in which she was denied requests for leave. Exhibit 1, ECF No 24-1, 198:15-24; Pl.'s

Opp'n, ECF No. 24, 35 ("after complaining about the retaliatory treatment, she was further

subjected to denial of overtime and leave requests"). Absent any substantive details on when

Plaintiff was denied overtime opportunities and leave requests, Plaintiff cannot rely on temporal

proximity to establish causation. And, Plaintiff provides no argument beyond temporal proximity

as to how her denials for overtime and leave are causally connected to a protected activity.

Moreover, Plaintiff's own deposition seems to belie any connection between her denials of

overtime and leave and her protected activities.

As to Plaintiff's alleged denial of overtime opportunities, Plaintiff states only that "it still

was not being distributed fairly." Exhibit 1, ECF No 24-1, 199:16-22. Plaintiff does not allege

that overtime opportunities were being denied to her specifically because of her protected

activity. Instead, Plaintiff appears to allege that the system for distributing overtime was generally unfair to many employees. The general unfairness of the overtime distribution system is at odds with Plaintiff's theory that she was targeted on account of her protected activities.

Plaintiff faces similar issues in discussing her denials of leave. Plaintiff explained that she "would request certain days to be off. And [Lieutenant Craig] doesn't want to pay anyone overtime, so it would be denied more often." Exhibit 1, ECF No. 24-1, 196:4-6. She further confirmed that leave would be denied because Defendant was "watching [its] budget very stringently now." *Id.* at 196:7-9. Plaintiff went on to acknowledge that Defendant "was mainly denying most people their time off but allowing it for some people." *Id.* at 196:19-21. Specifically, Plaintiff explained that another Sergeant, Tangie Payne, was generally the only person allowed to take leave. *Id.* at 196:19-197:1. Again, Plaintiff has not alleged that she was denied leave on account of her protected activity. Instead, based on Plaintiff's own statements, it appears that the majority of employees were denied leave based on budgetary decisions. The fact that one employee was granted leave disproportionately may be evidence of favoritism, but it is not evidence that Plaintiff was denied leave based on her protected activities.

Plaintiff has alleged only two acts which could rise to the level of adverse employment actions—the denial of opportunities for overtime and the denial of requests for leave. However, Plaintiff has failed to provide any details or evidence establishing that these denials occurred with sufficient severity and regularity to constitute an adverse action. Moreover, Plaintiff has failed to establish a causal connection between these denials and any protected activities. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Count 3 Rehabilitation Act retaliation claim.

## IV.  CONCLUSION

The Court GRANTS Defendant's motion for summary judgment.  First, as Plaintiff has voluntarily dismissed her Count 2 claim for hostile work environment, the Court DISMISSES that claim. Second, the Court GRANTS Defendant summary judgment on Plaintiff's Count 1 claim for failure to accommodate as Plaintiff's requested accommodation was unreasonable and would impose an undue hardship on Defendant. Third, the Court GRANTS Defendant summary judgment on Plaintiff's Count 3 claim for retaliation as Plaintiff has failed to allege an adverse employment action causally connected to a protected activity. As all of Plaintiff's claims have been resolved through dismissal or summary judgment, this case is DISMISSED. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge